IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CYNTHIA BREWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  CIV-13-420-R |
| | ) | |
| CAROLYN W. COLVIN, acting | ) | |
| Commissioner Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Cynthia Brewer (Plaintiff) seeks judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying her applications for disability insurance benefits and supplemental security income payments under the Social Security Act. United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Upon careful review of the pleadings, the administrative record (AR) and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

I.  **Administrative proceedings.**

A.  **State agency.**

Plaintiff protectively filed her applications with the Social Security Administration (SSA) in April 2010, alleging that back and neck injuries as well

as obsessive compulsive disorder had prevented her from working since July 13, 2004, the day she was in an elevator that fell 100 feet before hitting bottom. AR 12, 130-31, 170, 179, 183. The SSA denied Plaintiff's applications at the State agency level. *Id.* at 69-72, 73-77, 78-80, 83-85.

### B. Administrative hearing.

Plaintiff challenged that determination by requesting a hearing before an administrative law judge (ALJ). *Id.* at 86-87. In August 2011, Plaintiff appeared with her counsel, Miles Mitzner, at an administrative hearing at which both she and a vocational expert testified. *Id.* at 34-57.

### C. The Commissioner's final decision.

By written hearing decision, *id.* at 12-27, the ALJ found that Plaintiff suffers from degenerative disc disease, major depressive disorder, somatoform disorder, personality disorder, and anxiety disorder and that these impairments have more than a minimal effect on her ability to perform work-related activities. *Id.* at 14-15. Nonetheless, the ALJ concluded that none of these impairments, alone or in combination, were presumptively disabling. *Id.* at 15-17. He reviewed the voluminous medical evidence, evaluated the opinion evidence, and assessed the credibility of Plaintiff's subjective complaints before

determining that she had the residual functional capacity (RFC)[1] to perform work, albeit with restrictions. *Id.* at 17-25. He precluded her from performing any work exceeding the light exertional level;[2] any work where she would be required to stoop and crouch on more than an occasional basis; and any work where she would have more than limited interaction with the public. *Id.* at 17. Then, relying on the expert testimony of the vocational witness, the ALJ found that while the demands of Plaintiff's past relevant work would exceed this RFC, she remained capable of performing other available work in the national economy and, as a result, was not under a disability at any time from July 13, 2004 through the date of the decision. *Id.* at 25-26.

The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 1-6, and Plaintiff ultimately sought review of the Commissioner's

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2] By agency regulation,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b).

final decision in this Court. Doc. 1.

## II. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

### A. Plaintiff's claims of error.

Plaintiff brings three claims of error: (1) "[t]he ALJ failed to properly

assess [Plaintiff's] RFC"; (2) "[t]he ALJ failed to properly assess the treating physician[']s evidence"; and (3) "[t]he ALJ got credibility wrong." Doc. 12, at 7, 12, 19.[3]

### B. Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

### C. Evaluation of Plaintiff's claims.

#### 1. Whether the ALJ failed to properly assess Plaintiff's RFC.

Plaintiff maintains the ALJ committed specific errors in determining that Plaintiff "had the Residual Functional Capacity (RFC) to perform light work with her only limitations being only occasionally stoop and crouch and she is

---

[3] Page citations to Plaintiff's Brief in Chief are in sequential order and reflect this Court's CMECF pagination.

limited in interacting with the public." Doc. 12, at 7. The undersigned evaluates each of these specific claims of error in the light of the Tenth Circuit's admonition that "perfunctory complaints fail to frame and develop an issue sufficient to invoke [judicial] review." *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). This Court is unable to address contentions for which a claimant fails to develop the factual and legal bases for her arguments. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed"). On judicial review, "it is not our role to shore up [Plaintiff's] argument for [her] . . . ." *Chrismon v. Colvin*, 531 F. App'x 893, 896 (10th Cir. 2013) (citation omitted).

Plaintiff claims that while the ALJ correctly found that she suffers from several severe mental disorders, he "failed to properly analyze their impact upon her RFC" and "dealt only with what are known as the PRT Part B factors." Doc. 12, at 8. She explains "[t]hose are the Psychiatric Review Technique (PRT) areas of inquiry [and] are not the same as the ability to deal with the mental demands of work or her Mental RFC (MRFC)." *Id.* According to Plaintiff, "the ALJ made only a passing reference that his requirement to perform an MRFC requires 'a more detailed assessment' but then he failed to perform the more detailed assessment he said was required." *Id.* And, she contends, "if it is

6

argued that the MRFC was performed by completing the Part B portion of the PRTF; that is not the same as an MRFC . . . ." *Id.* Plaintiff also specifically asserts that when an ALJ is considering the RFC of a claimant with a severe mental impairment, the Tenth Circuit requires the ALJ to assess the claimant's ability to deal with supervisors and co-workers as well as with the public. *Id.* at 7. According to Plaintiff, "[t]his ALJ did nothing of the sort, which is reversible error." *Id.* That is the extent of the first portion of Plaintiff's claim. *Id.* at 7-8. (She does not, for example, point to any evidence the ALJ allegedly overlooked or misinterpreted that would impact his RFC assessment.)

Contrary to Plaintiff's contention, in addition to assessing, as required, Plaintiff's limitations in four broad functional areas – daily living activities; social functioning; concentration, persistence, or pace; and episodes of decompensation – for purposes of the special technique applied in the evaluation of mental impairments, *see* 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(C); 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3), the ALJ detailed Plaintiff's testimony regarding her mental limitations. AR 16, 17-18. Consistent with SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996), he described her medical mental health history, test results, the effects of treatment, and medical source statements. *Id.* at 23-24. As to Plaintiff's specific allegation that the ALJ wholly failed to evaluate her ability to deal with supervisors and co-workers as well as with the

public, this ignores the ALJ's restriction that Plaintiff work where she would have limited interaction with the public. *Id.* at 17. And, the ALJ specifically considered the opinion of State agency medical consultant Carolyn Goodrich, Ph.D., that Plaintiff "can relate to others on a superficial work basis." *Id.* at 24. Plaintiff, who does not question the evidentiary support for the ALJ's conclusions, has failed to establish error through these particular claims.

Next, having *just* argued that the ALJ erred because he "dealt only with what are known as the [Psychiatric Review Technique] Part B factors," Doc. 12, at 8, Plaintiff changes tack, and contends the ALJ *failed* to consider the four factors the Tenth Circuit has found *crucial* in the assessment of a mental RFC. *Id.* at 9. She relies on the court's decision in *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994), and claims that the ALJ should have considered her ability to engage in daily living activities; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances. Doc. 12, at 9.[4]

The facts and the law undercut Plaintiff's contentions. First, she concedes that the ALJ considered her daily living activities, finding that she had mild difficulties. *Id.*; *see* 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.00(C)(1). Similarly,

---

[4] As discussed below, Plaintiff fails to apprehend that what she terms as the "PRT Part B factors," Doc. 12, at 8, are the current regulatory version of the four factors the Tenth Circuit referenced in *Washington v. Shalala*, 37 F.3d at 1440.

she acknowledges the ALJ considered her difficulties with regard to concentration, persistence, or pace, an evaluation which she admits "could potentially have some relationship" to her ability to focus and finish a task in a timely manner. Doc. 12, at 9; *see* 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.00(C)(3).

As to social functioning, Plaintiff does not deny that the ALJ addressed this functional area – finding that she had moderate limitations, AR 16 – but argues that he failed to discuss her ability to interact appropriately with the public, supervisors, and co-workers. Doc. 12, at 8, 9. "The problem with this argument is that the term 'social functioning' is broad and includes the ability to interact 'with the public' or respond to supervisors or coworkers." *Pool v. Astrue*, No. CIV-11-338-M, 2012 WL 1893632, at *2 (W.D. Okla. May 3, 2012) (unpublished report & recommendation) (quoting 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.00(C)(2)), *adopted by* 2012 WL 1893649 (W.D. Okla. May 23, 2012) (unpublished order). "Thus, by evaluating [Plaintiff's] social functioning, the [ALJ] effectively assessed the ability to interact with the public, supervisors, and coworkers in an employment setting." *Id.*[5]

In this same vein, Plaintiff claims that "[w]ithout question, the ALJ

---

[5] The undersigned notes that Plaintiff's counsel, Miles Mitzner, served as claimant's counsel in *Pool.*

9

completely missed the requirement to evaluate [Plaintiff's] ability to adapt to stressful situations. Nothing in the ALJ's opinion addresses [Plaintiff's] significant difficulties in dealing with stressful situations." Doc. 12, at 9.

Undoubtedly, "[t]he court in *Washington v. Shalala* did require consideration of the ability 'to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.'" *Pool,* 2012 WL 1893632, at *3 (quoting *Washington,* 37 F.3d at 1440). Nonetheless, once again, Plaintiff does not deny that the ALJ fully considered whether Plaintiff had experienced any episodes of decompensation. AR 16; *see* 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.00(C)(4). And, as Judge Bacharach explained,

> [t]he regulatory definition for that phrase, at the time *Washington* was decided, was "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs and symptoms (i.e., decompensation) with an accompanying difficulty in maintaining activities of daily living, social relationships, and/or maintaining concentration, persistence, or pace (i.e., deterioration which may include deterioration of adaptive behaviors"). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4) (1994).

*Pool,* 2012 WL 1893632, at *3. Thus, by considering Plaintiff's episodes of decompensation, if any, the ALJ in the case at bar met the requirements of *Washington* by addressing the last of the four functional factors prescribed by

20 C.F.R. pt. 404, subpart P, App. 1 § 12.00(C).[6]

Next, Plaintiff cites to *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996), arguing that the ALJ "failed to develop any evidence regarding the mental demands [of] any *potential* jobs . . . ." Doc. 12, at 10 (emphasis added). In *Winfrey*, a step four case, the court held that "the ALJ must make findings regarding the . . . mental demands of the claimant's *past* relevant work." 92 F.3d at 1024 (emphasis added). The ALJ decided the case at bar at step five and in reliance on the testimony of a vocational expert. AR 25, 26. "At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform." *Winfrey*, 92 F.3d at 1025. Plaintiff's reliance on *Winfrey* is inapposite.

Finally, Plaintiff is simply wrong in arguing that "the ALJ's opinion wasn't even consistent with the PRT found by the state agency (DDS) as they found moderate, moderate, mild and none in the Part B, whereas the ALJ found mild, moderate, mild, and none. (TR 16, 662)." Doc. 12, at 10. Plainly, both the State expert and the ALJ found, using Plaintiff's shorthand, mild, moderate,

---

[6] In fact, the *Washington* court recognized that the ALJ had addressed the claimant's ability to adapt to stressful circumstances factor, concluding that "[t]he only one of these [four] factors that the ALJ discussed in his opinion was plaintiff's ability to work without deteriorating or decompensating." 37 F.3d at 1440.

11

moderate, and none. AR 16, 662.

### 2. Whether the ALJ failed to properly assess the treating physician's evidence.

Here, Plaintiff maintains that the ALJ erred by giving no weight to the opinions of her treating physicians on the stated grounds that the opinions were inconsistent with her MRI exams, x-rays, and objective findings and were based on Plaintiff's subjective complaints. Doc. 12, at 12. Plaintiff asks, "Other than this subjective statement, did the ALJ ever mention how they were inconsistent? Never. There is no substantial evidence for the ALJ's statement." *Id.* She argues that:

> the evidence from the treating physicians does not support the ALJ's finding that [Plaintiff] can perform the six hours of standing or walking required of light work and that every treating physician had numerous limitations all sedentary and below. Most were no lifting greater than ten (10) pounds and one at five (5) pounds as shown above.

*Id.* at 12-13.

"The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. The ALJ clearly did so in this case. AR 19-23. He provided a thorough, detailed review of Plaintiff's treatment following her elevator accident in July 2004, tracing the various (inconsistent) opinions on

12

Plaintiff's functional abilities; noting the inconsistency of those findings with the objective findings; and pointing to instances where opinions fluctuated on the basis of Plaintiff's subjective complaints. *Id.* His reasons for rejecting the opinions were specific.

Although Plaintiff generally maintains that the ALJ's findings lack substantial evidentiary support, she fails to challenge the legitimacy of those findings. The closest she comes is by pointing to Dr. Carl's "varying work restrictions" in reliance on a December 2004 discogram and Dr. Mitchell's permanent restrictions to less than a full range of sedentary work. Doc. 12, at 13. The ALJ rejected those opinions, finding them "inconsistent with repeated MRI exams of her lumbar spine and x-rays of her cervical spine, as well as objective findings following Dr. Mitchell's treatment, and it appears the fluctuating opinions were based upon subjective complaints or whether she received a second opinion regarding surgery." AR 21. In making this finding, the ALJ specifically relied on an April 2007 MRI of the claimant's lumbar spine showing no central canal or neuroforaminal stenosis and showing only mild degenerative disease at L2-3 through L4-5 without evidence of nerve root impingement. *Id.*; *id.* at 466-67. Plaintiff does not explain why the ALJ's reasons for rejecting these opinions are not legitimate.

Contrary to Plaintiff's rhetorical assertion, the ALJ carefully and

13

specifically detailed the inconsistencies in the medical source evidence and his reasoning for rejecting various opinions with regard to Plaintiff's functional limitations. Plaintiff has failed to demonstrate that the ALJ's findings lack legitimacy.

Next, Plaintiff claims that the ALJ's RFC did not "include several of [Plaintiff's] established physical limitations[, f]or instance there, are several references to [Plaintiff's] back causing bowel dysfunction." Doc. 12, at 15. Plaintiff cites to records of four occasions, AR 335, 337, 343, 341, between March and October 2007 when bowel dysfunction was diagnosed.[7] She implies this was somehow a non-severe impairment that warranted RFC consideration. Doc. 12, at 15-16. She does not, however, explain how this so-called impairment satisfied the requirements of 20 C.F.R. §§ 404.1509, 416.909.

Plaintiff further maintains the ALJ "also failed to discuss the GAF scores and what he thought about them." *Id.* at 16. The ALJ, however, addressed the scores and afforded them "little weight." AR 24. Because Plaintiff overlooked the ALJ's findings on this issue, she has necessarily failed to develop an argument addressing the ALJ's rationale. Consequently, the issue is not addressed in this report.

---

[7] Though Plaintiff cites eight page references, Doc. 12, at 15, four of those (AR 415, 417, 421, and 423) are duplicates.

Finally, Plaintiff maintains that the opinions of non-treating physicians are of questionable value. Doc. 12, at 18. That is not correct. With regard to the opinions of State agency consultants, Social Security regulations provide that

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence . . . .

20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

### 3. Whether "[t]he ALJ got credibility wrong."[8]

Plaintiff maintains the ALJ "briefly summarized the medical evidence (including the testimony of the claimant), but did not properly link any of the factors to specific evidence." Doc. 12, at 19. In this regard, an ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as the following:

---

[8] Doc. 12, at 19.

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted). Likewise, an ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Contrary to Plaintiff's conclusory assertion, the ALJ plainly provided the requisite linkage in this case. *See* AR 19-25.

Next, Plaintiff points to the ALJ's finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Doc. 12, at 19-20 (quoting AR 19). She maintains that it evidences "an improper approach to credibility." *Id.* at 20. Relying on the Seventh Circuit's decision in *Bjornson v. Astrue,* 671 F.3d 640, 645-46 (7th Cir. 2012), Plaintiff contends that

> [t]he problem with the ALJ's analysis of the claimant's credibility (apart from vagueness) is that the ALJ should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the guidelines *and only then* formulated an appropriate RFC, not the other way around, *i.e.,* the ALJ apparently judged the

16

> credibility of the claimant's testimony by comparing it to a pre-determined RFC.

*Id.*

The ALJ's decision reflects otherwise. In proceeding through the sequential process, the ALJ set out his RFC finding – a finding reached "[a]fter careful consideration of the entire record," AR 17 – and then detailed how he had arrived at such an assessment, specifically stating that "[i]n making this finding" he had considered Plaintiff's symptoms. *Id.* The ALJ noted he was required to evaluate whether Plaintiff had shown by objective medical evidence that she suffered from mental or physical impairments that could reasonably be expected to produce her symptoms and, if so, whether Plaintiff's pain was disabling in the light of the *entire* record. *Id.*; *see also Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987). To this end, the ALJ thoroughly summarized Plaintiff's testimony with regard to her subjective complaints, AR 17-18, and then determined that her complaints regarding the extent of her symptoms were not fully credible, *id.* at 19, a determination that was linked to evidence in the record. *Id.* at 19-25. Notwithstanding the ALJ's use of language suggesting that the RFC had been formulated before Plaintiff's credibility was assessed, *id.* at 19, his decision plainly reflects that the opposite occurred.

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by April 20, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 31st day of March, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE